# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY MINERD, | ) |
|             Petitioner, | )    Civil Action No. 12 - 1504 |
| v. | )    Magistrate Judge Lisa Pupo Lenihan |
| SUPERINTENDENT WINGARD and THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA, | ) |
|             Respondents. | ) |

## MEMORANDUM OPINION

Petitioner, Timothy Minerd (hereinafter referred to as "Minerd" or "Petitioner"), a state prisoner, has petitioned the Court for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). For the reasons that follow, the Petition will be dismissed as untimely and, in the alternative, denied.

## I.    Relevant Factual History

The following recitation is taken from the Opinion of the Pennsylvania Supreme Court dated June 20, 2000, affirming the Pennsylvania Superior Court's January 12, 1999 Order affirming Petitioner's judgment of sentence.

> The following facts were developed at trial. The two victims were V. M., who was born in 1977, and her sister J. M., who was born in 1978. Their mother became romantically involved with Appellant, the brother of the girls' father, and in the early 1980s he moved into the girls' home in Lemont Furnace, Pennsylvania. Appellant married the girls' mother in 1983.
> In the early 1980s, appellant would look after the children in the evening while their mother was away from the home selling Tupperware at parties. V. M., who was twenty at the time of trial, testified that appellant began molesting her when she was three and one-half or four years old. She recounted that Appellant

would awaken her in her bedroom and then take her into the bathroom and remove her clothes. He would have her wring out his wet jeans by walking on them in the bathtub. Afterwards, appellant would have V. M. step out of the tub and face away from him, and then he would touch her and engage in anal intercourse with her. Although V. M. did not remember the exact number of incidents, she recalled that they happened repeatedly while the family lived in Lemont Furnace.

According to V. M.'s mother, the family moved to Fairchance, Pennsylvania in 1984, where V. M. stated that appellant molested her three or four more times. V. M.'s younger sister, J. M., testified that appellant molested her in a similar manner when she was six years old. V. M. testified that appellant told her that if their mother learned about the incidents, she would abandon her just as their father had. The girls' mother stated that Appellant moved out of the home in 1985; they divorced in 1987. Appellant asserted that he had never lived with the family in Fairchance and denied all allegations of sexual abuse.

In 1989, after V. M. learned about AIDS in school, she became convinced that she had contracted the disease from appellant and revealed to her mother that she had been molested. J. M. then disclosed that appellant had sexually abused her as well. The girls' mother sought assistance from several social services agencies, and ultimately reported the incidents to the Pennsylvania State Police, who prepared an arrest warrant for appellant on October 4, 1989. Although appellant knew of the warrant in 1990, he did not surrender to police until June 1997.

At the trial in January 1998, the Commonwealth presented the testimony of Dr. Margaret Carver, a qualified expert in obstetrics and gynecology, who examined the girls on October 26, 1989, when V. M. was 12 years old and J. M. was eleven years old. Dr. Carver testified that she found no evidence of physical trauma to the girls' genital or anal areas. N.T. at 114-15. According to Dr. Carver, the absence of physical trauma did not prove that the abuse had never occurred. N. T. at 115. She explained that because of the nature of the muscle that closes the anus, there would have been an adequate time between when the abuse occurred and the examination for any damage that had been done to heal. Id. On cross-examination, Dr. Carver confirmed that she was not stating that the alleged acts did or did not occur, and agreed that it could be that "there was no trauma to the anus or genitals because the acts in fact did not occur." N.T. at 117-18. Dr. Carver stated that "either way, there was no evidence of it." N.T. at 118.

The jury convicted appellant of one count each of involuntary deviate sexual intercourse (18 Pa.C.S. §3123) and statutory rape (18 Pa.C.S. §3122) for crimes committed against V. M. Appellant was also convicted of two counts of indecent assault (18 Pa.C.S. §3126), one count for each child. He was acquitted of statutory rape and involuntary deviate sexual intercourse for alleged incidents involving J.M. The trial court sentenced appellant to an aggregate term of imprisonment of seven and one-half to twenty-two years.

(Pa. Supr. Ct. Op. June 20, 2000, ECF No. 14-12 at pp.1-3.)

## II. Time Period for Filing Federal Habeas Corpus Petitions

This proceeding is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").[1] Pursuant to the AEDPA, Congress imposed a one-year limitations period applicable to state prisoners, which provides as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>     (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>     (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>     (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>     (D)    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

---

[1] Because Petitioner filed his federal habeas petition after the effective date of the AEDPA, the Court must apply the standards set forth in the AEDPA to his claims for federal habeas relief. *See* Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000) (citing Lindh v. Murphy, 521 U.S. 320, 336 (1997)).

The statute of limitations set out in § 2244(d)(1) must be applied on a claim-by-claim basis. Fielder v. Varner, 379 F.3d 113 (3d Cir. 2004), *cert denied*, 543 U.S. 1067 (2005). In analyzing whether a petition for writ of habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger date" for the one-year limitations period pursuant to section 2244(d)(1). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to section 2244(d)(2). Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented.

As to the first inquiry, the "trigger date" for AEDPA purposes is the date that Petitioner's judgment of sentence became final pursuant to section 2244(d)(1)(A).[2] Petitioner's judgment of sentence became final on September 18, 2000, which was ninety days after the Pennsylvania Supreme Court affirmed his judgment of sentence on June 20, 2000.[3] His one-year limitations period for filing a federal habeas petition started to run the following day. Thus, absent any tolling, Petitioner had until June 20, 2001 to file a timely federal habeas petition.

As to the second inquiry, the one-year limitations period was tolled during the pendency of Petitioner's "properly filed" state post-conviction proceedings pursuant to section 2244(d)(2). While Petitioner did file a collateral appeal pursuant to Pennsylvania's Post Conviction Relief

---

[2] Petitioner does not assert that there was an impediment to filing his habeas petition which was caused by state action, that his petition involves a right which was newly recognized by the United States Supreme Court, or that there are new facts which could not have been previously discovered. *See* 28 U.S.C. § 2244(d)(1)(B)-(D). Therefore, the "trigger date" for all of his claims is the date his judgment of sentence became final.

[3] An appellant has ninety days to file a petition for writ of certiorari with the United States Supreme Court from the date of a state court of last resort decision. *See* Sup.Ct.R. 13(1).

4

Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.*, he did not initiate the appeal until October 21, 2010, over nine years after his limitations period for filing a federal habeas petition expired.[4] Thus, absent the application of any equitable tolling, the instant Petition is clearly untimely.

From what the Court can glean from his Petition, Petitioner appears to allege that his one-year statute of limitations should be tolled because of "newly discovered evidence". He does not, however, specify what evidence is newly discovered and why such evidence should be considered in determining the timeliness of his Petition. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). Without knowing what the "newly discovered evidence" is that Petitioner relies on in support of tolling, and when he learned of this evidence, there is simply no way to determine whether Petitioner is entitled to any tolling on the basis of such evidence; and, because his one-year limitations period expired long before he filed the instant Petition, the Petition must be dismissed as untimely. Alternatively, for the reasons that follow, the Petition is denied.

### III. Claims

In claim one, Petitioner argues that the Commonwealth relied on "improper medical opinion" that was "not supported by sound medical fact, science or documentation." (ECF No. 5 at p.5.) In this claim, Petitioner appears to object to the testimony of Commonwealth expert Dr. Margaret Carver, a medical doctor and expert in the field of obstetrics and gynecology, who testified that she found no evidence of damage to the victims' genital or anal area but that she

---

[4] The state court deemed Petitioner's PCRA appeal as untimely under 42 Pa.C.S.A. § 9545(1).

5

could not say with medical certainty that nothing occurred because any damage would have had adequate time to heal. (Tr. Ct. Op. Apr. 1998, ECF No. 14-7 at pp.5-6.)

On direct appeal, Petitioner objected to the admissibility of Dr. Carver's testimony on the grounds of relevancy since "no medical examination was conducted at the times of the alleged acts." Id. at p.12. In the trial court's opinion pursuant to Pa.R.A.P. 1925, the court concluded that Dr. Carver's "opinion that the lack of medical evidence is not inconsistent with the allegation of anal sodomy set forth in the history of the child because of the adequate time period for healing of wounds is admissible." Id. at p.13. On appeal, the Pennsylvania Superior Court affirmed in a memorandum opinion, relying on Commonwealth v. Johnson, 690 A.2d 274, 277 (Pa. Super. 1997) (*en banc*), where a majority of an *en banc* panel of the Superior Court held that it was error to exclude expert testimony that the "absence of diagnostic injuries or scars is common and does not exclude the possibility of penile anal penetration or other forms of sexual contact." (Pa. Super. Ct. Op. Jan. 12, 1999, ECF No. 14-10 at pp.7-8.)

The Pennsylvania Supreme Court granted review in this case to examine whether Dr. Carver's testimony was admissible in the Commonwealth's case-in-chief; specifically, her testimony that the absence of physical trauma is nevertheless consistent with the alleged sexual abuse. (Pa. Supr. Ct. Op. June 20, 2000, ECF No. 14-12 at p.1.) The court reviewed Petitioner's claims that Dr. Carver's testimony improperly bolstered the victims' credibility, that its probative value was outweighed by its prejudicial value, that it was irrelevant and that it may have unduly influenced the jury, but the court ultimately concluded that the trial court did not abuse its discretion in admitting her testimony. Id. at pp.5-6.

In the instant Petition, Petitioner argues that Dr. Carver's testimony was not supported by scientific documentation. Although Petitioner never made this specific challenge to Dr. Carver's

testimony in state court, a ruling regarding the admissibility of evidence is solely a question of state law of which a federal habeas court may not reexamine. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (Federal courts reviewing habeas claims cannot "reexamine state court determinations on state-law questions."); Wilson v. Vaughn, 533 F.3d 208, 213 (3d Cir. 2008). *See also* Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). This is particularly true in the instant case since the admissibility of Dr. Carter's testimony was directly addressed by the Pennsylvania Supreme Court.

Furthermore, "federal habeas relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990). Instead, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241. Claims based on state court evidentiary errors cannot warrant habeas relief unless the petitioner demonstrates that the error rose to the level of a due process violation by denying him the fundamental right to a fair trial. *See* Estelle, 502 U.S. at 67-68; Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001) (recognizing that in order to show that evidentiary error amounted to a due process violation under habeas review, a petitioner must show that the error is of "such magnitude as to undermine the fundamental fairness of the entire trial"). In this case, Petitioner does not argue that the admission of Dr. Carver's testimony rose to the level of a due process violation. However, the record is clear that the admission of Dr. Carver's testimony was not so pervasive as to have denied him a fundamentally fair trial. In fact, Dr. Carver offered more than one view of the physical evidence based on her examination of the children, and on cross-examination, defense counsel was able to elicit an explanation which was equally favorable to Petitioner. As the

7

Pennsylvania Supreme Court noted, "Dr. Craver's testimony offered the jury potential theories to explain the results of the physical examination of the children," and "upon hearing all of these theories, [the jury] was able to accept or reject any part of [her] testimony." (Pa. Supr. Ct. June 20, 2000, ECF No. 14-12 at p.9.) Consequently, this Court finds that Petitioner's due process rights were not violated by the admission of her testimony.

Petitioner's remaining claims are procedurally defaulted. Claims two through four were presented to the state court for the first time in Petitioner's PCRA petition that he filed on October 21, 2010. The PCRA court dismissed the petition for lack of jurisdiction after determining that the petition was untimely and that Petitioner failed to plead and prove a statutory exception to the PCRA's time-bar found in 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). (PCRA Ct. Op. and Order March 3, 2011, ECF No. 14-22.) On appeal, the Pennsylvania Superior Court affirmed the dismissal of the petition as untimely. (Pa. Super. Ct. Op. Sept. 30, 2011, ECF No. 14-2.)

The procedural default doctrine prohibits federal habeas courts from reviewing a state court decision involving a federal question if the state court declined to rule on the merits of the claim because it determined that the petitioner did not comply with a state procedural rule,[5] and that rule is independent of the federal question and adequate to support the judgment. *See*, *e.g.*, Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman v. Thompson, 501 U.S. 722, 732 (1991). A state rule of procedure is "independent" if it does not depend for its resolution on answering

---

[5] State procedural grounds for denying a PCRA claim include, but are not limited to, the PCRA's timeliness requirement, 42 Pa.C.S. § 9545(b), failing to adequately develop the claim in one's briefing, Commonwealth v. Bracey, 795 A.2d 935, 940 n. 4 (Pa. 2001); Pa. R.A.P. 2116, 2119(a), and presenting claim on appeal without having presented it to the lower court, Commonwealth v. Wharton, 811 A.2d 978, 990 (Pa. 2002); Pa. R.A.P. 302(a).

any federal constitutional question. *See*, *e.g.*, Ake v. Oklahoma, 470 U.S. 68, 75 (1985). That is the case here, since the Superior Court's decision was based on the application of a state statute of limitations rule. It was also "adequate." A state rule is "adequate" if: (1) the state procedural rule was sufficiently clear at the time of the default to have put the petitioner on notice of what conduct was required; (2) the state appellate court reviewing the petitioner's claim refused to review it on the merits because the petitioner failed to comply with the rule; and (3) the state court's refusal was consistent with other decisions. Shotts v. Wetzel, 724 F.3d 364, 370 (3d Cir. 2013); Nara v. Frank, 488 F.3d 187, 199 (3d Cir. 2007). *See also* Beard v. Kindler, 558 U.S. 53, 60 (2009) (discretionary state rules can be "adequate"); Ford v. Georgia, 498 U.S. 411, 423-24 (1991) (a state procedural rule is "adequate" if it is "firmly established and regularly followed" at the time that the alleged procedural default occurred).

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: (1) "cause" for the default *and* "actual prejudice" as a result of the alleged violation of federal law;[6] or (2) failure to consider the claims will result in a "fundamental miscarriage of justice."[7] Coleman, 501 U.S. at 750; Carter v. Vaughn, 62 F.3d

---

[6] To satisfy the cause standard, a petitioner must demonstrate that some objective factor external to the defense impeded his or her efforts to raise the claim in state court. McCleskey v. Zant, 499 U.S. 467, 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must demonstrate that the error worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions, not merely that the error created a "possibility of prejudice." Carrier, 477 U.S. at 494.

[7] Where a petitioner cannot make a showing of "cause and prejudice," a federal court may nevertheless consider the merits of his or her unexhausted claims under circumstances in which the failure to adjudicate such claims would result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750. This exception to the procedural default doctrine is based on the principle that, in certain circumstances, "the principles of comity and finality that inform the

9

591, 595 (3d Cir. 1995). Petitioner has neither argued nor demonstrated either exception to the procedural default doctrine. Consequently, claims two through four of his Petition would not be subject to habeas review even if the Petition had been timely filed. However, these claims, even under *de novo* review, are clearly without merit.

In claims two and three, Petitioner essentially argues that his counsel was ineffective for failing to call an expert. In support of his argument, he points to an article authored by a criminal defense attorney that was published in August 2010 in "Graterfriends-A Publication of The Pennsylvania Prison Society". It is unclear, however, exactly how the article provides Petitioner with any kind of support for his ineffective assistance of counsel claim. The article, not identified but believed to be "Reports of Sexual Abuse, Expert Questioned by District Attorney," concerns a forensic nurse, a qualified expert in several Pennsylvania counties, whose findings of alleged sexual abuse were later called into question by other experts who concluded that she identified sexual abuse injuries that were non-existent or exaggerated. The last part of the article stresses the importance of hiring experts to review findings that support otherwise unsubstantiated allegations, and informs that the failure to do so could be the basis of an ineffective assistance of counsel claim.

Ineffective assistance of counsel claims are "governed by the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984)." Shelton v. Carroll, 464 F.3d 423, 438 (3d Cir. 2006) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003)). Under Strickland, a habeas

---

concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" Carrier, 477 U.S. at 495 (quoting Engle v. Isaac, 456 U.S. 107, 135 (1982)). The "prototypical example" of a miscarriage of justice is a situation in which an underlying constitutional violation has led to the conviction of an innocent defendant. Sawyer v. Whitley, 505 U.S. 333, 340 (1992). In that instance, the merits of a petitioner's claims can be considered notwithstanding his or her failure to raise them before the state courts.

petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. 466 U.S. at 687. For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Petitioner has the burden of setting forth sufficient facts to support each claim but he has not done so with respect to his claims about counsel's ineffectiveness for failing to call an expert witness. Petitioner fails to specify what expert witness would have testified and what testimony that expert would have given if different than Dr. Carver's testimony. Making a bald assertion that he counsel was ineffective for not calling an expert because he was entitled to one does not afford a sufficient ground to provide habeas relief.

Furthermore, trial counsel need not introduce expert testimony on her client's behalf if she is able to effectively cross-examine prosecution witnesses and elicit helpful testimony, which was the situation in this case.

Petitioner also argues that his counsel failed to adequately represent him after she successfully represented a client in an appeal before the Pennsylvania Supreme Court in Commonwealth v. Hawk, 709 A.2d 373 (Pa. 1998), wherein the court held that the trial court abused its discretion in precluding the defense from admitting testimony of a forensic scientist regarding negative test results of a rape kit that was administered to the alleged victim. Petitioner's argument, however, is somewhat illogical because the expert testimony in his case,

although admitted in the Commonwealth's case-in-chief, is similar to that offered by the defense expert in Hawk. This fact was even noted by the Pennsylvania Supreme Court in its June 20, 2000 Opinion. In both cases the experts' test or examination results were inconclusive, and in both cases the experts' testimony offered the jury with potential theories, even an explanation of the results that was helpful to the defense. Specifically, that it was possible that penetration did not occur at all. To the extent Petitioner's complaint is that trial counsel sought an expert in Hawk and not in his case, her ineffectiveness in this regard has already been addressed and will not be addressed further.

Finally, in claim four, Petitioner argues that his counsel was ineffective for failing to inform him about Hawk, *supra*, because she later became a district attorney. Petitioner has failed to show any connection between trial counsel's career path and her representation as his defense counsel. Furthermore, the Court has already explained why she was not ineffective for failing to call an expert at Petitioner's trial.

For the foregoing reasons, the Petition is denied in the alternative.

## IV.     Certificate of Appealability

Section 102 of the AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Petitioner has not made a substantial showing of the denial of a constitutional right or shown that jurists of reason would disagree that his habeas petition was untimely filed. *See*, *e.g.*, Slack v. McDaniel, 529 U.S. 473 (2000) (explaining standard for grant of a certificate of appealability where court does not

address petition on the merits but on some procedural ground). Accordingly, the Court will not grant a certificate of appealability. A separate Order will issue.

Dated: November 2, 2015.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge

cc: Timothy Minerd
DM-7639
SCI Laurel Highlands
Unit DB
5706 Glades Pike
P.O. Box 631
Somerset, PA 15501-0631

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| TIMOTHY MINERD, | ) | |
| --- | --- | --- |
| | ) | Civil Action No. 12 - 1504 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| SUPERINTENDENT WINGARD and | ) | |
| THE ATTORNEY GENERAL OF | ) | |
| THE STATE OF PENNSYLVANIA, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

**AND NOW**, this 2nd day of November, 2015.

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 5) is **DISMISSED** as untimely and, in the alternative, **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge